Filed 10/6/14  K.G. Mullen, Inc. v. Team Transit Mix, Inc. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| K.G. MULLEN, INC., et al., | B249501 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC410282) |
| v. | |
| TEAM TRANSIT MIX, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Suzanne G. Bruguera, Judge.  Affirmed.

Gary Kurtz, Law Offices of Gary Kurtz, and Brandon J. Anand, Anand & Associates, for Plaintiffs and Appellants.

No appearance for Defendants and Respondents.

\* \* \* \* \* \*

After one judge tentatively finds that a plaintiff has proven up its damages following the entry of default, can a second judge to whom the case is later assigned consider additional evidence and enter a smaller damages award? If so, was the second judge's smaller award in this case supported by substantial evidence? The answer to both questions is yes, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Winters-Schram Associates ("Winters") hired Plaintiffs K.G. Mullen, Inc. and Kevin Mullen (collectively, "Plaintiffs") to do the structural concrete work on two jobs--one in Malibu, and another for the Los Angeles Museum of the Holocaust. Plaintiffs sub-contracted with Defendants Team Transit Mix and its owner Tom Nelson (collectively, "Defendants") to mix colored concrete for the Malibu job. Defendants got the color wrong, and their mistake became obvious only after the concrete dried. Plaintiffs then spent approximately $158,000 to tear out the mismatched concrete and to pour new concrete. Winters thereafter terminated Plaintiffs on the Malibu job, as well as the Holocaust Museum job, for failing to "fully pay . . . vendors and laborers on the Project[s]" and for "[w]illfully divert[ing] payments made by [Winters] for the express benefit of [Plaintiffs'] vendors and laborers . . . to other purposes."

Plaintiffs sued Defendants for negligence, and sought their costs of remediation and for $2 million in unspecified "lost prospective economic benefits." When Defendants did not respond to the complaint, Plaintiffs sought a default and default judgment from the court. Plaintiffs submitted documentation in support of a request for $158,605 in reimbursement costs and an additional $529,326.27 in consequential damages. Plaintiffs argued that Winters had been withholding $529,326.27 in profits owed to Plaintiffs on the Malibu and Holocaust Museum jobs; that Plaintiffs lost those profits when Winters terminated them; that Winters' termination was due to Plaintiffs' inability to pay its vendors; and that Plaintiffs were unable to pay those vendors because they were forced to spend money fixing Defendants' mistake.

2

The first judge reviewed Plaintiffs' documentation. That judge's order noted that Plaintiffs' "default package sufficiently prove[d] up the damages sought," but directed Plaintiffs to submit "an accurately calculated proposed judgment."

Before any default judgment was signed, the case was reassigned to a different judge. The second judge issued an order requesting additional briefing and evidence on the propriety of the damages Plaintiffs sought. Plaintiffs complied. The second judge entered a default judgment for $158,605 in reimbursement damages, along with interest and costs, for a total of $238,557; she did not award the consequential damages of $529,326.27.

Plaintiffs appealed.

## DISCUSSION

I.      *Second Judge's Authority To Act*

Trial judges generally have the power to change their minds when hearing a case. (*In re Marriage of Nicolas* (2010) 186 Cal.App.4th 1566, 1577 (*Nicolas*).) This power is less expansive when one judge revisits the earlier ruling of a different judge because, in that situation, there is a greater danger that litigants might "forum shop" for judges or that the second judge would "becom[e] a one-judge appellate court." (*Sorensen v. Superior Court* (2013) 219 Cal.App.4th 409, 421, citation and internal quotation marks omitted; *Alvarez v. Superior Court* (2010) 183 Cal.App.4th 969, 982-983 (*Alvarez*).)

These dangers are not implicated in this case, and the rule circumscribing the second judge's authority to revisit an earlier ruling is inapplicable. Here, the transfer to a different judge was unilaterally effected *by the court*--not prompted by a litigant; forum shopping is therefore of little concern. More to the point, the rule giving precedential effect to a different judge's earlier ruling does not apply when that ruling is interlocutory (rather than final), particularly when the second judge has "considered further evidence and law." (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 644; see also *Tilem v. City of Los Angeles* (1983) 142 Cal.App.3d 694, 706 [second judge may revisit first judge's findings of fact and conclusions of law made after first phase of trial]; *Alvarez, supra*, 183 Cal.App.4th at p. 983 [second judge may reject plea agreement first judge

3

approved].)  A ruling is interlocutory if "further judicial action is required for a final determination of the rights of the parties. . . ."  (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1293; cf. *In re Alberto* (2002) 102 Cal.App.4th 421, 429 [what matters is finality of *ruling*, not entry of judgment].)  The flexibility of interlocutory rulings is essential to avoid having every interim ruling become a *de facto* final ruling.  (*Nicolas, supra*, 186 Cal.App.4th at p. 1578 ["A court could not operate successfully under the requirement of infallibility of its interim rulings."]; see also *People v. Sons* (2008) 164 Cal.App.4th 90, 100 [finality of interim rulings would improperly apply law of the case doctrine to trial court rulings].)

Under this authority, the second judge's default judgment was appropriate.  The first judge's order was interlocutory because that judge was awaiting submission of an acceptable default judgment.  Further, the second judge's ruling reflects the solicitation and consideration of additional facts and argument--not merely a difference of opinion with the first judge.

II.    *Substantial Evidence*

Where, as here, a default is entered, plaintiffs may "prove up" damages "as appear[] by the evidence to be just," as long as those damages do not exceed the amount prayed for in the complaint and any properly filed statement of damages.  (Code Civ. Proc. § 585, subd. (b).)  "[W]ell-pleaded allegations" in the complaint may be deemed admitted, (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281), but plaintiffs must still "produce evidence" to make out a "prima facie case" of entitlement to damages (*Harbour Vista, LLC v. HSBC Mortgage Services, Inc.* (2011) 201 Cal.App.4th 1496, 1503 n.6.)  We review a trial court's damages findings following default for substantial evidence.  (*Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1150.)  (We may also review for proportionality, (*id.*), but that is not at issue in this appeal.)

The second judge's ruling is supported by substantial evidence.  Plaintiffs correctly note that they may recover consequential damages for the negligent performance of a contract "[w]here a special relationship exists between the parties." (*North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 782.)  The

"*critical factor*" in this inquiry is the foreseeability of the harm (*id.*), but courts will also consider "the closeness of the connection between the defendant's conduct and the injury suffered" (*Id.*; *S. C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, 536 [Plaintiffs must show a "reasonable probability that profits would have been earned *except for the defendant's conduct*"], italics added.)

Plaintiffs' complaint alleges no specific facts regarding consequential damages, so Plaintiffs were required to prove up the causal link between their loss of profits and Defendants' breach of contract. Plaintiffs submitted the declaration of Kevin Mullen expressing his opinion that Defendants were solely responsible for the loss of profits on both jobs. However, the termination letters from Winters gave two reasons for the terminations: (1) Plaintiffs' failure to pay its vendors; and (2) Plaintiffs' willful diversion of *Winters'* funds meant for vendors. The trial court was accordingly confronted with multiple reasons as to why Winters fired Plaintiffs, including a reason (the second one) not linked to Defendants' misfeasance. Because evidence can be "substantial" even if it is contradicted by other evidence, (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571), we must affirm.

## DISPOSITION

The judgment is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

_____, J.
        HOFFSTADT

We concur:

_____, P. J.
      BOREN

_____, J.
      ASHMANN-GERST

5