Filed 1/28/16  Marriage of Hollingsworth CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEPHEN CHARLES HOLLINGSWORTH, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MARIA DEL MAR HOLLINGSWORTH, <br><br> Defendant and Respondent. | B257681 <br><br> (Los Angeles County <br> Super. Ct. No. GD043710) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dianna Gould-Saltman, Judge.  Reversed in part and remanded.

Michael R. Carver, for Plaintiff and Appellant.

Tobie B. Waxman and Andrea Caster, for Defendant and Respondent.

\* \* \* \* \* \*

In this divorce action, appellant Stephen C. Hollingsworth (husband) petitioned for marital dissolution against his wife, respondent Maria Del Mar Hollingsworth (wife). Despite a court order and multiple requests to do so, husband never served his wife with a preliminary declaration disclosing his assets and liabilities. The trial court consequently struck husband's petition, elected to treat wife's response as the operative pleading, and declared husband in default. Nearly two years later, the court entered a default judgment awarding wife certain assets, legal and physical custody of their son, and denying husband all visitation rights. The court later denied husband's motion to vacate the default and default judgment. We conclude that the court did not abuse its discretion in striking husband's petition and correctly entered a default as to child custody and visitation. We further conclude that the court may have erred in entering a default as to the disposition of property because wife's petition never detailed the property at issue and it is unclear if her preliminary declaration did so, and erred in entering a default judgment as to the disposition of property as well as child custody and visitation because wife presented no evidence on these issues at the default "prove up" hearing. We accordingly reverse in part and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

## I.     Initial Pleadings

Husband and wife married in 1995, and had a son in 2004.

On January 6, 2009, husband filed a petition for dissolution of their marriage. On the form petition, husband checked the box requesting that the trial court "confirm[] as [his] separate property" the "assets and debts listed in a Property Declaration" form, but never attached the form.

On February 11, 2009, wife filed a response that also requested dissolution. On the form response, wife checked the box requesting that the court "confirm[] as [her] separate property" the "assets and debts listed," but she listed no assets or debts; instead, she typed: "Discovery is ongoing and [wife] will amend upon completion." Wife also checked the box indicating that she was "list[ing]" "all" "community and quasi-community property assets and debts," but again listed no specific assets or debts;

2

instead, she typed: "Discovery is ongoing and the extent of community property and debts is unknown but [wife] will amend upon completion." Wife also checked the boxes requesting "legal" and "physical" custody of her son, but checked no boxes regarding visitation. Wife never amended her pleading.

## II. Orders Regarding Preliminary Declarations and Entry of Default

On June 30, 2011, the trial court held a trial setting conference and hearing on whether to relieve husband's counsel as counsel of record. At that hearing, the court observed that neither husband nor wife had served one another with preliminary declarations disclosing their assets and liabilities, as required by Family Code sections 2103, 2104, and 2105.[1] At the hearing and in a subsequently entered order, the court ordered both husband and wife to exchange their preliminary declarations of disclosure within 30 days and warned that, if either party disobeyed, "then [it] will consider striking either [husband's] petition or [wife's] response, and the court may proceed by way of a default."[2] Husband's counsel still represented husband at the time of the hearing and order.

Wife served her preliminary declaration on husband on August 3, 2011. She never filed the declaration with the trial court because section 2103 only requires that a spouse file "proof of service" of the declaration. On November 10, 2011, wife served husband with a notice formally requesting his preliminary declaration. Husband did not respond. On March 19, 2012, wife filed a motion, which she served on husband, asking the court (1) to waive, pursuant to section 2107, subdivisions (b)(3) and (d), the requirement that husband file his declaration and thereby to lift the statutory bar precluding entry of judgment until both spouses served their declarations and (2) to award "any additional or alternative relief as the Court deems appropriate." In a declaration in support of the

---

[1] Unless otherwise indicated all further statutory references are to the Family Code.

[2] The amended version of section 2104 enacted in 2009 mandates a petitioner to serve his or her preliminary declaration of disclosure concurrently with the petition for dissolution or within 60 days of the filing of the petition. (See Stat. 2009, c. 110 (A.B. 459), § 1; Stats. 2012, c. 107 (A.B. 1406).)

3

motion, wife requested "any additional relief that the Court deems appropriate, including striking [husband's] Petition, deeming [wife's] Response as the Petition, and taking [husband's] default."

On April 24, 2012, the trial court heard wife's motion. The court granted the motion to waive receipt of husband's preliminary declaration, struck husband's petition, deemed wife's February 2009 response as the operative petition for marital dissolution, and entered an order of default against husband for failing to serve his preliminary declaration. Husband was served with the court's order.

## III.    Entry of Default Judgment

On January 16, 2014, wife filed an income and expense declaration. In it, she claimed no assets other than $20,000 in unspecified "personal property" and $4,000 in cash and deposits.

On February 28, 2014, the trial court heard wife's request for the entry of a default judgment. Wife presented no affidavits and called no witnesses at the hearing.

The trial court nevertheless entered a default judgment. With respect to their son, the court granted wife sole physical and legal custody, and denied husband any visitation rights. With respect to their property, the judgment specified that husband and wife were to retain, as their own separate property and debt, (1) "any and all personal property"; (2) "any and all liabilities, obligations and debts incurred [by husband or wife] in [his or her own name] after January 1, 2008," which was the date wife alleged they separated; (3) "any and all gifts received . . . during marriage"; and (4) "all earnings and accumulations of . . . prior to the parties' marriage and subsequent to the date of separation." The judgment also provided, as to wife alone, that she would retain "any and all rights, title and interest in the following retirement, pension and IRA accounts in [wife's] name, including but not limited to [wife's] CALPERS retirement account."

The judgment made no provision for the $250,000 in student loans, the "unknown amount of back taxes," or the $30,000 in "community personal and past community business debts" husband disclosed in the income and expense declaration he filed prior to entry of the default judgment.

4

## IV. Efforts To Set Aside Judgment

On April 24, 2014, husband moved to set aside both the 2012 order of default and the 2014 default judgment under Code of Civil Procedure section 473, subdivision (b) and the court's equitable powers. The trial court refused to vacate the order of default because husband's motion (1) was not filed within a "reasonable time" within six months of the entry of the default in 2012; and (2) lacked merit because husband did not demonstrate the requisite "mistake, inadvertence, surprise, or excusable neglect." Because it found "[no] basis to set aside the default . . .", the court also declined to set aside the default judgment.

## V. Appeal

Defendant timely appeals.

## DISCUSSION

Husband argues that the trial court erred in (1) striking his petition as a terminating sanction for his refusal to serve a preliminary declaration of disclosure, (2) declining to vacate its order of default in 2012, and (3) entering a default judgment in 2014.

## I. Imposition of Terminating Sanction

Spouses have fiduciary duties to each other. (§ 721, subd. (b) ["in transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of the persons occupying confidential relations with each other"].) These duties extend to "the management and control of community property" (*In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 569; § 1100, subd. (e)), and continue notwithstanding "the separation of the spouses [and] the commencement of a dissolution proceeding" (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905).

Our Legislature partially codified these duties in sections 2100 through 2107. (See *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 286-287 [noting how these statutory duties are "fiduciary in nature"]; *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 651 (*Sorge*) [same].) Specifically, section 2104 obligates each spouse to serve upon one another—but not the court—a sworn "preliminary declaration of

5

disclosure" that "set[s] forth with sufficient particularity" (1) "[t]he identity of all assets in which the [disclosing spouse] has or may have an interest and all liabilities for which the [disclosing spouse] is or may be liable, regardless of the characterization of the asset or liability as community, quasi-community, or separate" (§ 2104, subd. (c)(1)), and (2) "[t]he [disclosing spouse']s percentage of ownership in each asset and percentage of obligation for each liability where property is not solely owed by one or both parties" (*id.*, subd. (c)(2)).  (See generally, §§ 2104 & 2102.)  Section 2105 requires the spouses to serve on one another a "final declaration of disclosure" that "include[s]" (1) "[a]ll material facts and information regarding the characterization of all assets and liabilities" (§ 2105, subd. (b)(1)), (2) "[a]ll material facts and information regarding the valuation of all assets" and "all obligations" "that are contended to be community property" or "community obligations" or in which "it is contended that the community has an interest" or "liability" (*id.*, subds. (b)(2) & (b)(3)), and (3) "[a]ll material facts and information regarding the earnings, accumulations, and expenses of each party that have been set forth in the income and expense declaration" (*id.*, subd. (b)(4)).

A spouse's noncompliance with these statutes has consequences.  The other spouse, if she has complied and if her spouse has not, can move the trial court (1) to compel a further response, (2) to preclude the noncomplying spouse from presenting evidence "on issues that should have been covered in the declaration of disclosure" or (3) after a showing of good cause, to waive the requirement that the noncomplying spouse file a declaration and thereby pave the way to entry of judgment.  (§ 2107, subds. (a) & (b).)  More to the point, a court faced with a spouse's noncompliance "shall, *in addition to any other remedy provided by law*, impose monetary sanctions against the noncomplying party."  (§ 2107, subd. (c), italics added.)  These monetary sanctions "shall be in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust."  (*Ibid.*)  Because the sanctions available to a court are "plainly aimed at effectuating the goal of reducing the adversarial nature of

marital dissolution rather than at redressing any *actual harm* inflicted on the complaining spouse," the imposition of sanctions does not require a showing of "actual injury" to the spouse who did comply. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1480 (*Feldman*).)

The trial court in this case struck husband's petition as a sanction for his persistent refusal to file a preliminary declaration of disclosure. Husband argues that this was error—and that the court consequently erred in deeming wife's response as the operative petition and entering default against him—for three reasons: (1) section 2107, subdivision (c) does not authorize a court to enter what amounts to a terminating sanction; (2) the court did not comply with the dictates of due process before striking his petition; and (3) the court in any event abused its discretion in selecting and imposing a terminating sanction. Husband's first argument raises a question of statutory interpretation and his second raises a question of constitutional interpretation; we review each de novo. (*Feldman*, *supra*, 153 Cal.App.4th at p. 1479 [statutory construction]; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 142 [due process challenge].) Husband's third argument attacks the court's exercise of its "broad" discretion in imposing sanctions and we accordingly review the court's actions for an abuse of that discretion. (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390 [noting ""'"broad discretion"'"'] (*Los Defensores*); *Sorge*, *supra*, 202 Cal.App.4th at pp. 652-653 [sanctions under section 2107, subdivision (c) are reviewed for an abuse of discretion].)

## A.     *Range of sanctions under section 2107, subdivision (c)*

Husband contends that section 2107, subdivision (c) does not empower a trial court to impose a terminating sanction by striking a party's pleading. We disagree. As noted above, the plain text of section 2107, subdivision (c) explicitly states that the court's power—and, in many cases, its duty—to impose monetary sanctions against a spouse for noncompliance with the disclosure duties set forth in sections 2104 and 2105 is "in addition to any other remedy provided by law." (§ 2107, subd. (c).) The phrase "any other remedy provided by law" means what it says, and allows a court to look to sanctions available under the Civil Discovery Act, Code of Civil Procedure section

7

2016.010 et seq. (See, e.g., *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1119 [statute criminalizing gang activity that preserves "any other remedy provided by law" allows aggrieved persons to sue gang members under "general public nuisance statutes"]; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 502 [statute creating grievance procedures that preserves "any other remedy provided by law" allows aggrieved party to sue under unfair competition law].)

The Civil Discovery Act authorizes a court to "impose a terminating sanction by . . . [¶] striking out the pleadings . . . of any party engaging in the misuse of the discovery process (Code Civ. Proc., § 2023.030, subd. (d)(1)), and defines "misuse of the discovery process" to include the "[f]ail[ure] to respond to or to submit to an authorized method of discovery" (§ 2023.010, subd. (d)) and "[d]isobeying a court order to provide discovery" (§ 2023.010, subd. (g)). (Accord, *Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1516 (*Van Sickle*) [so noting].) The trial court's order striking husband's petition for disobeying the court's June 30, 2011 order and for not otherwise complying with section 2104 was within the court's authority under the Civil Discovery Act and thus within the scope of its authority under section 2107, subdivision (c).

### B. Due process

Husband asserts that the trial court's imposition of terminating sanctions, even if authorized by statute, nevertheless violated his right to due process because (1) wife's March 2012 motion for waiver and "additional, alternative relief" did not provide him adequate notice that terminating sanctions might be imposed, and (2) the court did not discuss terminating sanctions on the record at the April 24, 2012 hearing preceding the imposition of those sanctions. Neither argument has merit.

Due process requires that a party facing sanctions has "adequate notice prior to [the] imposition of sanctions" and an opportunity to respond before sanctions are imposed. (*O'Brien v. Cseh* (1983) 148 Cal.App.3d 957, 961-962, superseded on other grounds by section 904.1, subd. (k); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 651-654.) Husband had adequate notice that terminating sanctions were at play because (1) the trial court said as much at the June 30, 2011 hearing at which husband's counsel

8

was present and in its June 30, 2011 written order, and (2) wife's March 2012 motion sought a waiver *and* "any additional alternate relief as the Court deems appropriate," and her accompanying declaration further defined that phrase as including dismissal of husband's petition.[3] Husband also had the opportunity to respond to wife's motion and the court's June 30, 2011 order, as he knew of the motion and had the ability to file responsive papers or arrange a telephonic appearance at the hearing.

Contrary to what husband suggests, due process does not require a trial court to make express, on-the-record findings before issuing a sanctions order. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1438 [Civil Discovery Act sanctions need not be accompanied by written order explaining sanctions].) To the contrary, we are required to imply all findings necessary to support the trial court's order. (E.g., *Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1291; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["all intendments and presumptions are indulged in favor of (an order's) correctness"].)

In sum, the trial court's sanctions order complied with due process.

## C.    *Abuse of discretion*

Husband next argues that the trial court, even if it acted within its statutory authority and in a constitutional manner, nevertheless abused its discretion because husband's conduct in refusing to file a preliminary declaration was not "willful" and because terminating sanctions were overly severe. These arguments are without merit.

A trial court abuses its discretion in imposing terminating sanctions "unless the party's violation of the [pertinent] procedural rule was willful [citations] or, if not willful, at least preceded by a history of abuse of pretrial procedures, or a showing less severe

---

[3]    There is currently a split of authority as to whether courts may issue relief on grounds stated only in the affidavits or declarations accompanying a motion but absent from the motion itself. (Compare *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1126-1127 [looking to affidavit] with *Hernandez v. Natural Dairy Products Co.* (1954) 126 Cal.App.2d 490, 493-494 [looking only to motion].) Even if this precedent applies to the *relief* a court may grant (rather than the ground on which it is sought), this split is not implicated here because wife's motion expressly requested "additional alternate relief."

sanctions would not produce compliance with the procedural rule." (*Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 97-98; *Los Defensores*, *supra*, 223 Cal.App.4th at p. 390 [noting same three factors].)  Because the trial court did not make express findings as to husband's willfulness, his history of abuse, or whether lesser sanctions would be inadequate, our task is to assess whether the findings we are required to imply are supported by substantial evidence.  (E.g., *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 698.)  Here, they are.

Husband had nearly two and a half years to file his preliminary declaration before the trial court ordered him to do so on June 30, 2011; husband ignored that order despite wife's identical request in November 2011 and her motion in March 2012.  By the time the trial court struck husband's petition in April 2012, husband had for more than three years refused to file his preliminary declaration notwithstanding a court order and repeated reminders to do so.  Substantial evidence supports a finding that this refusal was willful and that lesser sanctions would have been fruitless.  The court did not abuse its discretion.

## II.     Entry of Default

A trial court's entry of default against a party may later be vacated in one of two ways.  A court has the *statutory* power to vacate an order of default against a party if the default was due to that party's "mistake, inadvertence, surprise, or excusable neglect" and if the party's application for relief from that default is filed "within a reasonable time, in no case exceeding six months, after the . . . order [of default] . . . was taken."  (Code Civ. Proc., § 473, subd. (b).)  A court also has an inherent, equitable power to vacate an order of default if, at a minimum, that order is the product of "extrinsic fraud" or "extrinsic mistake."  (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 470-472 (*Kulchar*).)  Extrinsic fraud arises when a party has been """"deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense."""" (*Manson, Ivor & York v. Black* (2009) 176 Cal.App.4th 36, 47 (*Manson*), quoting *Kulchar*, at p. 471.)  Extrinsic mistake refers to "the excusable neglect of the defaulting party to appear and present his claim or defense" that arises from

10

"'circumstances extrinsic to the litigation.'" (*Manson*, at p. 47, quoting *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.) An equitable motion is "not governed by any statutory time limit" (*Department of Industrial Relations v. Davis Moreno Constr., Inc.* (2011) 193 Cal.App.4th 560, 570-571), but "there is a strong public policy in favor of the finality of judgments" that counsels against entertaining such motions outside the six-month statutory deadline absent "exceptional circumstances" (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071). We review a trial court's decision not to vacate a default under either mechanism for an abuse of discretion. (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503.)

In this appeal, husband does not challenge the trial court's ruling that his motion filed in 2014 was filed more than six months after the 2012 default, thus making it untimely under Code of Civil Procedure section 473, subdivision (b). Instead, husband argues that the court abused its discretion in implicitly denying his equitable motion. He alleges five factors that, in his view, amount to extrinsic fraud or extrinsic mistake: (1) the court did not intend to enter terminating sanctions; (2) husband was too ill to respond; (3) he was unable to respond because he was incarcerated in September and October 2011, and from December 2011 through May 2013; (4) he relied on a September 2013 entry in the court's online case summary indicating that no default had been entered; and (5) he was not served with the order of default.

We conclude that the trial court did not abuse its discretion in denying husband's equity-based request for relief for two reasons. First, his motion was untimely. Husband filed his motion in April 2014, nearly two years after the order entering default and 18 months after the six-month window under Code of Civil Procedure section 473 expired. The last two reasons husband points to as extrinsic fraud and extrinsic mistake pertain to the delay between the court's order entering default and husband's motion. However, neither of them justifies his delay in filing his motion for relief from default. Although the court's online case summary reflects a September 24, 2013 entry that inaccurately notes "no default entered" due to a "response filed on February 11, 2009," this entry reflects the court clerks' failure to account for the court's April 24, 2012 order (which is

11

noted as "Order" in the online case summary) that struck husband's petition and deemed wife's February 11, 2009 response as the petition. More to the point, husband should have known that the online case summary was incorrect because, contrary to what he now says, he was served with a copy of the court's April 2012 order entering default. Husband has not demonstrated the "exceptional circumstances" necessary to justify his extraordinary delay.

Second, husband has not proven that extrinsic fraud or extrinsic mistake contributed to the entry of the default order. Because, as noted above, husband's last two reasons pertain solely to events that occurred *after* the entry of default, they do not affect the propriety of the entry of the default; we accordingly focus on husband's first three reasons. As explained above, the trial court did not accidentally enter a default after striking husband's complaint. To the contrary, the court did precisely what it admonished the parties it might do on June 30, 2011. Thus, the absence of any discussion regarding sanctions at the April 24, 2012 hearing does not, as husband contends, mean the court entered the default in error.

Defendant's claimed illness and his incarceration do not constitute extrinsic fraud or extrinsic mistake. They are not extrinsic fraud because they involve no fraud. They also do not qualify as extrinsic mistake because they did not "prevent" him from filing his preliminary declaration. To be sure, illness and incapacity can constitute extrinsic mistake. (E.g., *Evry v. Tremble* (1957) 154 Cal.App.2d 444, 446.) But the trial court did not abuse its discretion in concluding that the three "illnesses" or symptoms husband asserts he suffered from—"uncontrolled diabetes" in April 2012, unspecified and self-reported "physical and mental incapacity" from November 2010 through July 2013, and "confus[ion]" since 2011—did not qualify. With respect to his alleged illnesses, husband's proof consists of his own statements, an unauthenticated hemoglobin test, and the statements of two friends who knew him since 2011; none of this evidence constitutes a substantiated medical opinion and, as the trial court noted, neither of husband's friends "could or did testify that [husband] was so mentally or physically impaired that he was not able to address the issues on a timely basis." With respect to his incarceration,

12

husband's claimed periods of incarceration—in September and October 2011, and from December 2011 through May 2013—conflict with the periods in which husband also claims to have been homeless. Husband in any event never explained why he did not file his preliminary declaration in the 20 months between filing his January 2009 petition and his first incarceration in September 2011. What is more, as the court noted, "inmates frequently file moving papers and respond to moving papers from jail or prison"; husband's bare assertion that he was incarcerated was thus not enough to explain why he, unlike other incarcerated persons, was unable to file his preliminary declaration.

In sum, the trial court did not abuse its discretion in not declining to vacate the order entering default against husband.

## III. Entry of Default Judgment

A trial court may enter a default judgment in a marital dissolution action (*In re Marriage of Khan* (2013) 215 Cal.App.4th 1113, 1117 (*Khan*); § 2336, subd. (a)), but only if the court (1) "require[s] proof of the grounds alleged" either by live witnesses or by affidavit (§ 2336, subd. (a)), and (2) awards relief that does not "exceed that demanded in the complaint" (Code Civ. Proc., § 580, subd. (a); *Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 968 (*Dhawan*) ["section 580, subdivision (a), limits a trial court's jurisdiction to grant relief on a default judgment to the amount stated in the complaint"].)

Husband argues that the trial court's default judgment transgresses both of these requirements. We review de novo the court's compliance with the proof requirement set forth in section 2336 (e.g., *Madain v. City of Stanton* (2010) 185 Cal.App.4th 1277, 1286), but review the quantum of any evidence presented solely to see if it makes out a "prima face case" supporting relief (*Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 362). Because a judgment that exceeds the relief requested in the operative complaint is void (*Dhawan*, *supra*, 241 Cal.App.4th at p. 974), we review that issue de novo (*Talley v. Valuation Counselors Groups, Inc.* (2010) 191 Cal.App.4th 132, 146) and may do so for the first time on appeal (*Yeung v. Soos* (2004) 119 Cal.App.4th 576, 582 ["a void judgment may be challenged at any time"]).

13

### A. *Default judgment, and possibly the default, as to property*

The trial court's default judgment allocates the parties' separate property assets and liabilities and awards wife ownership of her CalPERS retirement account. Wife's response—which became the operative petition once husband's petition was stricken—mentions none of this property. Instead, it says only that "[d]iscovery is ongoing" with a promise to amend. But there was no amendment. A spouse's completion of a form petition can be enough to put the opposing spouse on notice of what property is at issue upon a default, but only if the spouse seeking the default judgment "properly and fully complete[s] the petition and its necessary attachments to the extent of the relief requested on the face of those documents." (*In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 879; accord, *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1168-1170.) Wife's placeholder petition lacks this critical information. Without it, the defaulting spouse has no notice of the maximum judgment he faces (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 61) and impermissibly faces "'open-ended liability'" (*Dhawan*, *supra*, 241 Cal.App.4th at p. 969, quoting *Greenup v. Rodman* (1986) 42 Cal.3d 822, 826).

However, in family law cases, this defect in pleading can sometimes be cured by subsequent notice. In *In re Marriage of Eustice* (2015) 242 Cal.App.4th 1291 (*Eustice*), the wife's petition for dissolution of marriage asked the trial court to divide property but listed no property. After the husband's response was stricken due to his misconduct, the court entered default and a default judgment that divided property. *Eustice* ruled that the wife's failure to list property in her petition did not render the default judgment void because (1) her petition had requested that property be divided and (2) she had listed the property covered by the default judgment in the two preliminary declarations she filed; indeed, the husband's stricken response had also listed the same property. On these facts, *Eustice* reasoned that the wife's preliminary declarations operated like a supplemental statement of damages under Code of Civil Procedure sections 425.11 and 425.115, and thereby provided sufficient notice to authorize entry of a default judgment. (Cf. *Burtnett v. King* (1949) 33 Cal.2d 805, 811 [reversing judgment confirming marital home as wife's separate property where her petition for dissolution did not seek adjudication of

14

property ownership]; *Khan*, *supra*, 215 Cal.App.4th at pp. 1115-1117 [voiding portion of default judgment awarding damages for breach of fiduciary duty because wife did not list amount sought in her petition].)

At this point, we cannot tell whether *Eustice* applies because wife's preliminary declaration is not part of the record. In a supplemental letter brief, wife invites us to cure this evidentiary deficiency by augmenting the record on appeal with her preliminary declaration under Code of Civil Procedure section 909. We decline to do so because the trial court is in a better position to decide whether its judgment covers only property listed in the declaration. Accordingly, we vacate the default judgment and remand to the trial court to allow wife to file the preliminary declaration she previously served on husband. If the court determines that the declaration lists any of the property disposed of in the default judgment, then the entry of default was valid as to that property listed. However, because wife introduced no affidavits or witnesses at the prove-up hearing, she did not comply with the prove-up requirements set forth in section 2336. Thus, the court should proceed with a prove-up hearing at which wife can introduce affidavits and other evidence bearing on the division of any property specified in her preliminary declaration. At oral argument, wife argued that a new prove-up hearing is warranted only if husband shows he was prejudiced by the lack of a prove-up hearing; the law is to the contrary. (See, e.g., *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 289 [proof of insufficient evidence at a prove-up hearing under Code of Civil Procedure section 585 requires reversal; no showing of prejudice required].)

For property not listed in the preliminary declaration, the default is void and wife must file an amended petition setting forth the remaining property to be adjudicated. To be sure, in a typical case, the trial court has the option of "'modify[ing] the judgment to the maximum amount warranted by the [operative] complaint'" or "vacat[ing] the underlying default and allow[ing] the plaintiff to amend the complaint and serve [an] amended complaint on the defendant." (*Van Sickle*, *supra*, 196 Cal.App.4th at pp. 1521-1522.) But the first option is unavailable here because, to the extent that wife's preliminary declaration omits property, an order modifying the judgment to cover only

15

that property listed in her declaration would leave unresolved some of the property issues that courts are required by statute to resolve in a dissolution action. (§ 2550 ["(e)xcept upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage . . ., the court shall . . . divide the community estate of the parties equally"], § 63 [defining "community estate" to include both "community property and quasi-community property"].)

### B.  Child custody and visitation

Wife's "petition" also sought full legal and physical custody of her son, and concomitantly requested no visitation rights. Wife thus put husband on notice of a possible default judgment as to custody and visitation issues. However, wife did not satisfy the proof requirements of section 2336 because she offered no affidavits and called no witnesses at the default prove-up hearing in April 2014. Although a trial court can take judicial notice of the criminal protective order (Evid. Code, § 452, subd. (c); e.g., *Chambers v. Superior Court* (2007) 42 Cal.4th 673, 678, fn. 4 [taking judicial notice of out-of-state protective order]), the protective order in this case was issued in 2008 and thus is too old to trigger the statutory presumption that a court should award custody to the parent who is protected by such an order because that presumption applies only if the order is issued in the last five years. (§ 3044.) As a result, the burdens of proving that placing her son with her was in his best interest (§§ 3010, subd. (a) & 3040) and that all visitation should be denied (§ 3100) remained with wife and she presented no evidence to sustain those burdens.

As a result, we must vacate the default judgment on child custody and visitation issues. We nevertheless leave the order of default intact, and remand for a prove-up hearing at which wife can introduce affidavits and other evidence bearing on these issues. (Accord, *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 971-972, 994-997 [reversing judgment on the cause of action found in defendant's favor and remanding so that trial court may enter default for that claim, and affirming judgment on remaining claims found in plaintiff's favor ].)

# DISPOSITION

We reverse the judgment and remand. With respect to the disposition of property, we vacate the default judgment and remand for wife to file the preliminary declaration she previously served on husband. If the preliminary declaration lists any of the property disposed of in the default judgment, the order of default remains intact for that property and the trial court should conduct a prove-up hearing regarding the division of that property; if the preliminary declaration does not list some or any property disposed of in the default judgment, the order of default is void for the unlisted property and wife must be allowed to file and serve an amended complaint as to that property. With respect to child custody and visitation, we vacate the default judgment, leave intact the order of default, and remand for a prove-up hearing on those topics.

Each party to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
                                        HOFFSTADT

We concur:

_____, Acting P.J.
        ASHMANN-GERST


_____, J.
        CHAVEZ

17